MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone: (310) 271-6223
Facsimile: (310) 271-9805
E-mail: Michael.Berger@bankruptcypower.com

*Proposed* Counsel for Debtor and Debtor-in-Possession,
Century Design Inc.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | CASE NO.: 25-03975-11 |
| | Chapter 11 (Subchapter V) |
| Century Design Inc., | **FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF** |
| Debtor and Debtor-in-Possession. | |
| | Case Filed:    September 26, 2025 |
| | Dept:    1 |
| | Judge:    Hon. Christopher B. Latham |
| | Hearing Scheduled For |
| | DATE: TBD |
| | TIME: TBD |
| | PLACE: Department 1 – Room 218 |
| | 325 West F Street |
| | San Diego, California 92101 |

**TO THE HONORABLE CHRISTOPHER B. LATHAM, CHIEF JUDGE OF THE UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF CALIFORNIA, THE OFFICE OF THE UNITED STATES TRUSTEE, TO THE SECURED CREDITORS, TO THE TWENTY LARGEST UNSECURED CREDITORS, AND TO ALL OTHER INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to sections 361 and 363 of Title 11 of the United States Code[1]; Federal Rules of Bankruptcy Procedure 2002, 4001(b), and 9014; and Local Bankruptcy Rule 9013-4 and Appendixes D1 and D2, Debtor and Debtor-in-Possession Century Design Inc. submits this first day motion ("Motion") for an interim order approving Debtor's use of cash collateral.

Debtor's use of cash collateral is necessary for Debtor's operation and all secured creditors with an interest in such cash collateral are, or will be, adequately protected. This Motion is supported by the declarations of Michael Jay Berger and Keith McConnell filed herewith, the pleadings and papers on file in this case, and on such other oral and documentary evidence as may be submitted before the Court.

## I.   JURISDICTION AND VENUE

The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## II.   FRBP 4001(b) INTRODUCTORY STATEMENT

| | |
|---|---|
| Name of Entities with Interest in Cash Collateral: | Bank of Southern California; Exim Bank |
| Purpose of Use of Cash Collateral: | Debtor seeks authority to use cash on hand, income generated by the Debtor's business and accounts receivables from Debtor's manufacturing projects to pay operating expenses consistent with the Debtor's proposed cash collateral budget attached as Exhibit "3" ("Budget"). |
| Material Terms of Use of Cash Collateral: | Debtor requests authorization to use cash collateral to pay the expenses identified in the Budget with an authorized variance of up to 15% on any line item for each calendar month. To prevent irreparable harm, Debtor asks for entry of an interim order authorizing use of the cash collateral for a period of not less than 60 days pending further order of the Court. |
| Liens, Cash Payments, or Other Adequate Protection: | Debtor proposes a $2,000 monthly adequate protection payment to Bank of California, and a $2,500 monthly adequate protection payment to Exim Bank. |

---

[1] All statutory references herein are to Title 11 of the United States Code unless otherwise stated.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

> Additionally, Debtor believes the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted their pre-petition security interests.

## III. NOTICE

Concurrent with the filing of this Motion, Debtor will provide a copy of this Motion and its accompanying Notice of Motion to (a) the Office of the United States Trustee for the Southern District of California; (b) the Subchapter V Trustee; (c)the Secured Creditors; (d) the 20 largest unsecured creditors; (e) any party that has requested notice pursuant to FRBP 2002; and (f) any other parties in interest. Debtor respectfully submits that no further notice is required by FRBP 2002 or Local Bankruptcy Rules 2002-1, 2002-4, and 9013-4.

## III.    GENERAL BACKGROUND OF THE DEBTOR

On September 26, 2025, (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Debtor is continuing in possession of its property and is operating its business as debtor-in-possession pursuant to §§ 1107 and 1008.

Debtor is a California corporation known for its leading-edge composite machinery. It started with providing tooling for the aerospace industry in 1959, and since then has included the introduction of several breakthrough machinery solutions. Debtor developed the first carbon prepreg machine in 1960 and invented graphite golf shafts and fishing rods in 1972. Its history of providing leading-edge composite machinery has resulted in over 2,500 machines being installed, globally, and over 200 new companies being launched.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH
COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH
MCCONNELL IN SUPPORT THEREOF

Debtor's secured creditors have claims totaling an estimated $814,882.84, including a 2014 UCC Statement and recorded Judgment Lien from 2025 held by secured creditor Bank of Southern California ("BSC"). Debtor has no creditors with priority unsecured claims. Debtor's unsecured claims total an estimated $721,259.34, and consist of vendors, a worker's compensation claim, lawsuits, and legal fees.

Debtor is confident its business operations will return it to profitability. Debtor has a reasonable prospect of reorganization through chapter 11.

As is set forth in Debtor's schedules, on the Petition Date, the total scheduled value of Debtor's assets is $174,341.84. A true and correct copy of Debtor's Schedules A/B are attached to the Declaration of Keith McConnell as **Exhibit "1."**

## IV.    RELIEF REQUESTED

The Debtor seeks permission to use cash collateral, in accordance with the two (2) month budget ("Budget") attached as **Exhibit "3,"** to pay various items in the ordinary course of business and as authorized by the Court, including employee wages (including insiders)[2], insurance, marketing, rent, utilities, cost of goods, and other expenses necessary for the business operation. Debtor will file a budget covering 6-month period with the Court prior to the final hearing on the Cash Collateral Motion. Taken together, the services provided by all of the foregoing parties and other entities are critical to the preservation of the Debtor's business and asset value. Debtor intends to use the Cash Collateral to fund its reasonable, ordinary, and necessary operating expenses, including satisfying in a timely manner its customers' orders. Immediate relief is necessary to prevent irreparable harm and maintain Debtor's operations as a going concern. Debtor must continue to work on a daily basis to ensure there is no disruption to Debtor's business operations. Any delays in Debtor's use of cash collateral will cause

---

[2] Insiders will request insider compensation in compliance with LBR 4002-2(d)(5).

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

dissatisfaction by clients, delay in completion of orders, and will trigger a chain reaction negatively affecting the business.

Debtor believes the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted their pre-petition security interests.

Attached as **Exhibit "4"** to the Declaration of Michael Jay Berger is a proposed interim order submitted in accordance with FRBP 4001(b)(1)(A) ("Proposed Interim Order"). The Proposed Interim Order does not contain any provisions prohibited by Appendix D2 of the Local Bankruptcy Rules and should be entered pending further order of the Court.

A. Debtor's Need for the Use of Cash Collateral and Affected Parties

The Debtor has determined that absent the use of cash collateral, it will be unable to operate its business during its Chapter 11 Case, irreparably harming the Debtor's estate and creditors. If the Debtor is unable, on a consistent basis, to continue to use the cash collateral generated by the operation of its composite manufacturing business, the Debtor will not be able to operate, will lose its existing contracts, employees, vendors, its lease, and will ultimately be forced to cease operations. This will cause harm to the Debtor, but also to its clients who expect the Debtor to complete its pending manufacturing contracts. Furthermore, lack of use of cash collateral will harm the creditors of the estate because if the business ceases its operation, no revenue will be coming in to support the plan payments to be proposed through a plan of reorganization. Therefore, the Debtor's access to cash collateral is necessary to preserve and maximize the value of its assets for the benefit of all parties in interest. Thus, the use of cash collateral is essential to Debtor's

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH
COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH
MCCONNELL IN SUPPORT THEREOF

1  continued ability to operate and provide proper service to its clients until consummation

2  of a plan.

3    B. Secured Creditors and the Proposed Adequate Protection for Each Secured

4       Creditors is as Follows in Order of Priority of UCC Filings or Date Debt Was

5       Incurred:

| Century Design Inc. | | | | |
| --- | --- | --- | --- | --- |
| Summary of Secured Creditors | | | | |
| Date Incurred | Name of Creditor | Amount Owed | Description of Collateral | Proposed Adequate Protection |
| 9/12/2014 | Bank of Southern California | $214,016.79 | UCC Financing Statement; superceded by Notice of Judgment Lien in 2025 | Replacement Lien, adequate protection payments of $2,000 per month. |
| 11/8/2022 | Exim Bank | $593,055.05 | UCC Financing Statement, originally filed by GBC International Bank and assigned to Exim Bank[3] | Replacement Lien, adequate protection payments of $2,500. |
| 11/4/2023 | Kia Finance | 7,811.00 | Leased 2023 Kia Sportage | Secured by vehicle; no interest in cash collateral. Payments are current |

22  (collectively the "Secured Creditors").

23  A true and correct copy of Debtor's Schedule D indicating the priority and classification

24  of the Secured Creditors is attached to the Declaration of Keith McConnell as **Exhibit**

25  **"2."**

26

27

---

28  [3] Creditor Exim Bank is also secured by liens on three specialized machines manufactured by Debtor that are scheduled for sale. Debtor anticipates realizing approximately $615,000.00 in revenue from the sale of these machines.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

## V.    THE DEBTOR SHOULD BE PERMITTED TO USE CASH COLLATERAL

A. <u>The Relief Requested Is Authorized by 11 U.S.C. § 363</u>

Section 363 of the Bankruptcy Code, made pertinent to this case by 11 U.S.C. § 1107, governs a debtor-in-possessions' use of property of an estate. Section 363(c)(1) provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section 721, …of this title and unless the court orders otherwise, the [debtor-in- possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

Section 363(c)(2) stablishes a special requirement with respect to "cash collateral", by providing that a debtor-in-possession may not use, sell or lease "cash collateral" under subsection (c)(1) unless (i) such entity that has an interest in such collateral consents or (ii) the court, after notice and a hearing, authorizes such use, sale or lease.

> "Cash collateral" is defined by the Code as follows:
>
> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

1  11 U.S.C. § 363(a).

2      The definition of "cash collateral" set forth in Section 363(a) refers to Section

3  552(b) of the Code, which provides:

>4   Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of
>5   this title, if the debtor and an entity entered into a security agreement before
>6   the commencement of the case and if the security interest created by such
>7   security agreement extends to property of the debtor acquired before the
>8   commencement of the case and to proceeds, products, offspring, rents, or
>9   profits of such property, then such security interest extends to such
>10  proceeds, products, offspring, rents or profits acquired by the estate after
>11  the commencement of the case to the extent provided by such security
>12  agreement and by applicable non-bankruptcy law, except to the extent that
>13  the court, after notice and a hearing and based on the equities of the case,
>14  orders otherwise.

15

16  11 U.S.C. § 552(b)(1).

17      It is universally acknowledged that the debtor's cash "is the life blood of the

18  business" and the bankruptcy court must assure that such life's blood "is available for use

19  even if to a limited extent". *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981).

20  Courts typically authorize a debtor-in-possession to use cash collateral to continue its

21  business operations so long as the interests asserted by affected creditors in such cash are

22  adequately protected.

23      As this Motion and the declarations of Michael Jay Berger and Keith McConnell

24  in support of this Motion demonstrate, the standards for authorizing the Debtor to utilize

25  cash collateral are satisfied in this case because the ongoing operations will preserve the

26  value of the Debtor's businesses as a going concern.

27      B.  The Secured Creditors are Adequately Protected by Debtor's Proposed Use of

28      Cash Collateral

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH
COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH
MCCONNELL IN SUPPORT THEREOF

Section 363(e) requires the Court, "on request," to "prohibit or condition" the use of cash collateral upon providing a secured creditor adequate protection. Section 361 provides that such adequate protection can take the form of either (1) periodic cash payments to the extent the use of the cash collateral results in "a decrease in the value of [the] entity's interest in" the cash collateral or (2) authorization of a replacement lien to the extent that the debtor's use of the cash collateral results in a decrease in value of the creditor's cash collateral. The amount of adequate protection necessary is determined on a case-by-case basis. *See First Fed. Bank v. Weinstein (In re Weinstein)*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998) (where there was no decline or depreciation in the value of the secured creditor's collateral, the creditor was adequately protected by a replacement in post-petition rents and was not entitled to any adequate protection payments).

Debtor is proposing $2,000.00 monthly adequate protection payments to Secured Creditor, BSC, and $2,500 monthly adequate protection payments to its other Secured Creditor, Exim Bank. Debtor believes the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted pre-petition security interest.

In the case at bar, the Court should allow the use of cash collateral because the interests of the Secured Creditors are adequately protected. Section 361 of the Bankruptcy Code provides a non-exclusive list of ways to provide adequate protection, including periodic cash payments, the grant of liens on new collateral, and replacement liens. 11 U.S.C. §361. What constitutes adequate protection must be decided on a case-by-case basis. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the adequate protection requirement is to protect a secured creditor from diminution in the

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

value of its interest in the collateral during the period of use. *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994).

The Debtor submits that the proposed adequate protection is appropriate and sufficient to protect the Secured Creditors from any diminution in value of their collateral. The cash collateral will be used for funding business operations and allowing the Debtor to transition into the Chapter 11 Case. Immediate access to this liquidity will permit the Debtor to continue business in the ordinary course. If Cash Collateral is not available, the Debtor's business will dissipate value to the detriment of the Secured Creditors, and other stakeholders, including the Debtor's clients. Thus, the use of cash collateral will protect the Secured Creditors' security interests by preserving the value of the Collateral. See *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). See also *Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996*); In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992).

A debtor-in-possession's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 361. Although the term "adequate protection" is not defined in the Bankruptcy Code, Section 361 provides the following three non-exclusive examples of what may constitute adequate protection:

(1) requiring the [debtor-in-possession] to make a cash payment or periodic cash payments to such entity, to the extent that the …use…under section 363 of this title …results in a decrease in the value of such entity's interest in such property.

(2) providing to such entity an additional or replacement lien to the extent that such …use …results in a decrease in the value of such entity's interest in such property; or

10

(3) granting such other relief …as will result in the realization by such entity of the

indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361

Neither Section 361 nor any other provision of the Code defines the nature and extent of "interest in property" of which a secured creditor is entitled to adequate protection under Section 363. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property". *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

*Timbers* teaches that secured creditors are entitled to "adequate protection" only against the diminution in their interest in asserted collateral by reason of the use of cash collateral. Where the value of the Secured Creditors collateral is not diminishing by the Debtor's use, sale, or lease, it follows that Lenders' interests in cash collateral is adequately protected.[4] In *In re McCombs Props. VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988), the court applied the foregoing straightforward interpretation of *Timbers* in ruling that a secured creditor's interest in the cash and proceeds derived from a debtor's operations was adequately protected where the value of the collateral was not declining during the pendency of the bankruptcy case. On the nature of the protection required, the court noted:

> The analysis of the Supreme Court in *Timbers* is instructive here. The
>
> phrase "interest in property" in § 363 means the value of the collateral. That
>
> is the interest that I am required to protect. If that value is likely to diminish

---

[4] In *In re Alyucan Interstate Corp.*, 12 B.R. 803 (Bankr. D. Utah 1981), the court ruled that an equity cushion is not a requirement of adequate protection because a secured creditor is only entitled to protection against a decline in the value of its lien. The court reasoned that Section 361 speaks not in terms of preserving equity, but in terms of compensating for any "decrease in the value of [an] interest in property". *Id.*, at 803. The Supreme Court's decision in *Timbers* confirms the interpretation of Section 361.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH
COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH
MCCONNELL IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

during the time of the use, adequate protection must be provided by the debtor. As the Supreme Court stated in *Timbers*, thus, it is agreed if the apartment project in this case had been declining in value petitioner would have been entitled, under § 362(d)(1) to cash payments or additional security in the amount of the decline, as § 361 describes.

Id., at 266 (quotations omitted).

Similarly, in *In re Forest Ridge, II, Ltd. Partnership,* 116 B.R. 937 (Bankr. W.D.N.C. 1990), the court ordered that no adequate protection payments were required, because the property in question was not decreasing in value. See also *In re Megan-Racine Assocs.,* Inc., 202 B.R. 660 (Bankr. N.D.N.Y. 1996) (stating that adequate protection is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of a debtor's reorganization); *In re Gallegos Research Corp.*, 193 B.R. 577 (Bankr. D. Colo. 1995).

Applying the foregoing authorities to the instant case, the Secured Creditors are entitled to protection only against the decline in value of their interest in the collateral which secures their claims. The Debtor's manufacturing business income is projected to increase over the next several years and thus the continuing operations of the Debtor is adequate protection of the Secured Creditors.

To provide the Secured Creditors additional adequate protection pursuant to § 361 and 363(e), Debtor proposes use of Cash Collateral with the following limitations:

    a.  Any expenditures in excess of the monthly amounts set forth in the Budget and the allowable variance of 15% will require the written approval of the Secured Creditors or further order of the Court.

    b.  If less than the entire amount of any expense category is expended in a particular period, the unused portion may be carried over to future periods.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

c. Except as is otherwise provided for in the Budget, Debtor will not use cash collateral to make payments (i) to the holders of claims except as disclosed herein; or (ii) on expenses that do not directly relate to the preservation, maintenance, or operation of Debtor's business.

d. The Secured Creditors will be granted a replacement lien in property of Debtor's estate and proceeds thereof, tangible and intangible, to the same extent and priority as the liens held by the Secured Creditors on the petition date.

Debtor's proposed use of the Secured Creditors' cash collateral is consistent with the requirements of § 363 and the Secured Creditors are fully protected by the adequate protection proposed. In light of the foregoing, the Debtor submits that the proposed adequate protection to be provided is appropriate and necessary to protect the Secured Creditors against any diminution in value and is also fair and appropriate under the circumstances of this case and to ensure that the Debtor is able to continue using cash collateral in the near term, for the benefit of all parties in interest and its estate. In order to avoid immediate and irreparable harm and prejudice to the Debtor, its estate and all parties in interest, the Debtor requests that the Court authorize the Debtor's interim use cash collateral.

## IV. CONCLUSION

For the reasons set forth above, Debtor respectfully requests that the Court enter an order that it be authorized interim use of Cash Collateral as set forth herein, and for any other relief deemed necessary and proper.

///

///

///

///

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

Dated: October 3, 2025          LAW OFFICES OF MICHAEL JAY BERGER

By: _____
Michael Jay Berger
*Proposed* Counsel for Debtor
Century Design, Inc.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH
COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH
MCCONNELL IN SUPPORT THEREOF

## DECLARATION OF KEITH MCCONNELL

I, Keith McConnell, declare and state as follows:

1.      I am the Chief Executive Officer and owner of Century Design, Inc., the debtor and debtor-in-possession in the above-captioned matter (the "Debtor"). I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      On September 26, 2025, (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Debtor is continuing in possession of its property and is operating its business as debtor-in-possession pursuant to §§ 1107 and 1008.

3.      Debtor is a California corporation known for its leading-edge composite machinery. It started with providing tooling for the aerospace industry in 1959, and since then has included the introduction of several breakthrough machinery solutions. Debtor developed the first carbon prepreg machine in 1960 and invented graphite golf shafts and fishing rods in 1972. Its history of providing leading-edge composite machinery has resulted in over 2,500 machines being installed, globally, and over 200 new companies being launched.

4.      Debtor's secured creditors have claims totaling an estimated $814,882.84, including a 2014 UCC Statement and recorded Judgment Lien from 2025 held by secured creditor Bank of Southern California ("BSC"). Debtor has no creditors with priority unsecured claims. Debtor's unsecured claims total an estimated $721,259.34, and consist of vendors, a worker's compensation claim, lawsuits, and legal fees.

5.      Debtor is confident its business operations will return it to profitability. Debtor has a reasonable prospect of reorganization through chapter 11.

6.      As is set forth in Debtor's schedules, on the Petition Date, the total scheduled value of Debtor's assets is $174,341.84. A true and correct copy of Debtor's Schedules A/B are attached hereto as **Exhibit "1."**

15

7.    The Debtor seeks permission to use cash collateral, in accordance with the two (2) month budget ("Budget") attached as **Exhibit "3,"** to pay various items in the ordinary course of business and as authorized by the Court, including employee wages (including insiders)[5], insurance, marketing, rent, utilities, cost of goods, and other expenses necessary for the business operation. Debtor will file a budget covering 6-month period with the Court prior to the final hearing on the Cash Collateral Motion. Taken together, the services provided by all of the foregoing parties and other entities are critical to the preservation of the Debtor's business and asset value. Debtor intends to use the Cash Collateral to fund its reasonable, ordinary, and necessary operating expenses, including satisfying in a timely manner its customers' orders. Immediate relief is necessary to prevent irreparable harm and maintain Debtor's operations as a going concern. Debtor must continue to work on a daily basis to ensure there is no disruption to Debtor's business operations. Any delays in Debtor's use of cash collateral will cause dissatisfaction by clients, delay in completion of orders, and will trigger a chain reaction negatively affecting the business.

8.    Debtor believes the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted their pre-petition security interests.

9.    The Debtor has determined that absent the use of cash collateral, it will be unable to operate its business during its Chapter 11 Case, irreparably harming the Debtor's estate and creditors. If the Debtor is unable, on a consistent basis, to continue to use the cash collateral generated by the operation of its composite manufacturing

---

[5] Insiders will request insider compensation in compliance with LBR 4002-2(d)(5).

16

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

business, the Debtor will not be able to operate, will lose its existing contracts, employees, vendors, its lease, and will ultimately be forced to cease operations. This will cause harm to the Debtor, but also to its clients who expect the Debtor to complete its pending manufacturing contracts. Furthermore, lack of use of cash collateral will harm the creditors of the estate because if the business ceases its operation, no revenue will be coming in to support the plan payments to be proposed through a plan of reorganization. Therefore, the Debtor's access to cash collateral is necessary to preserve and maximize the value of its assets for the benefit of all parties in interest. Thus, the use of cash collateral is essential to Debtor's continued ability to operate and provide proper service to its clients until consummation of a plan.

| Century Design Inc. | | | | |
|---|---|---|---|---|
| Summary of Secured Creditors | | | | |
| Date Incurred | Name of Creditor | Amount Owed | Description of Collateral | Proposed Adequate Protection |
| 9/12/2014 | Bank of Southern California | $214,016.79 | UCC Financing Statement; superceded by Notice of Judgment Lien in 2025 | Replacement Lien, adequate protection payments of $2,000 per month. |
| 11/8/2022 | Exim Bank | $593,055.05 | UCC Financing Statement, originally filed by GBC International Bank and assigned to Exim Bank[6] | Replacement Lien, adequate protection payments of $2,500. |
| 11/4/2023 | Kia Finance | 7,811.00 | Leased 2023 Kia Sportage | Secured by vehicle; no interest in cash collateral. Payments are current |

(collectively the "Secured Creditors").

---

[6] Creditor Exim Bank is also secured by liens on three specialized machines manufactured by Debtor that are scheduled for sale. Debtor anticipates realizing approximately $615,000.00 in revenue from the sale of these machines.

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH MCCONNELL IN SUPPORT THEREOF

10. A true and correct copy of Debtor's Schedule D indicating the priority and classification of the Secured Creditors is attached hereto as **Exhibit "2."**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on October 3, 2025, in _____, California.

By:_____
Keith McConnell

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH
COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH
MCCONNELL IN SUPPORT THEREOF

## DECLARATION OF MICHAEL JAY BERGER

I, Michael Jay Berger, declare and state as follows:

1.       I am an Attorney at Law, licensed to practice before all of the courts in the State of California, and in the United States District Court for the Southern District of California. I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.       Attached as **Exhibit "4"** is a proposed interim order submitted in accordance with FRBP 4001(b)(1)(A) ("Proposed Interim Order").

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on October 3, 2025 at Beverly Hills, California.

Michael Jay Berger

FIRST DAY MOTION FOR INTERIM ORDER APPROVING USE OF CASH
COLLATERAL; DECLARATIONS OF MICHAEL JAY BERGER AND KEITH
MCCONNELL IN SUPPORT THEREOF

# EXHIBIT 1

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | **Century Design Inc.** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | **25-03975-11** |

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                 12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
■ Yes Fill in the information below.
All cash or cash equivalents owned or controlled by the debtor

Current value of debtor's interest

3.   Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **California Bank and Trust** | **Checking account** | 0178 | **$1,589.48** |
| 3.2. | **California Bank and Trust** | **Checking account** | | **$8,459.98** |

4.   **Other cash equivalents** *(Identify all)*

5.   **Total of Part 1.**                                                                                  **$10,049.46**
     Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
|---|---|

6. Does the debtor have any deposits or prepayments?

☐ No. Go to Part 3.
■ Yes Fill in the information below.

7.   **Deposits, including security deposits and utility deposits**
     Description, including name of holder of deposit

| | | |
|---|---|---|
| 7.1. | **Lease deposit (Mira Mar Investments)** | **$8,879.50** |

8.   **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Debtor    **Century Design Inc.**                                     Case number *(If known)*  **25-03975-11**
          Name

Description, including name of holder of prepayment

| | | |
|---|---|---|
| 9. | **Total of Part 2.** | $8,879.50 |
| | Add lines 7 through 8. Copy the total to line 81. | |

**Part 3:**    **Accounts receivable**

10. Does the debtor have any accounts receivable?

   ☐ No. Go to Part 4.
   ■ Yes Fill in the information below.

11. **Accounts receivable**

| | | | |
|---|---|---|---|
| 11a. 90 days old or less: | 24,462.88 | 0.00 = | $24,462.88 |
| | face amount | doubtful or uncollectible accounts | |

| | | |
|---|---|---|
| 12. | **Total of Part 3.** | $24,462.88 |
| | Current value on lines 11a + 11b = line 12. Copy the total to line 82. | |

**Part 4:**    **Investments**

13. Does the debtor own any investments?

   ■ No. Go to Part 5.
   ☐ Yes Fill in the information below.

**Part 5:**    **Inventory, excluding agriculture assets**

18. Does the debtor own any inventory (excluding agriculture assets)?

   ☐ No. Go to Part 6.
   ■ Yes Fill in the information below.

| | General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|---|
| 19. | **Raw materials**<br>**Raw materials** | 8/15/2025 | $0.00 | Liquidation | $26,250.00 |
| 20. | **Work in progress**<br>**Work in progress**<br>**all of costs associated**<br>**with current program**<br>**majority has been paid** | 9/5/2025 | $0.00 | Liquidation | $75,500.00 |

21. **Finished goods, including goods held for resale**

22. **Other inventory or supplies**

| | | |
|---|---|---|
| 23. | **Total of Part 5.** | $101,750.00 |
| | Add lines 19 through 22. Copy the total to line 84. | |

24. **Is any of the property listed in Part 5 perishable?**
   ■ No
   ☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

| Debtor | **Century Design Inc.** | Case number *(if known)* **25-03975-11** |
|---|---|---|
| | Name | |

■ No

☐ Yes. Book value _____    Valuation method _____    Current Value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
    ■ No
    ☐ Yes

---

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
☐ Yes Fill in the information below.

---

**Part 7:**    **Office furniture, fixtures, and equipment; and collectibles**

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** **Office furniture** | $0.00 | Liquidation | $1,300.00 |
| 40. **Office fixtures** | | | |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** **Office equipment** | $0.00 | Liquidation | $12,500.00 |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

43. **Total of Part 7.**
    Add lines 39 through 42. Copy the total to line 86.

    | $13,800.00 |
    |---|

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
    ■ No
    ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
    ■ No
    ☐ Yes

---

**Part 8:**    **Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
■ Yes Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

| Debtor | **Century Design Inc.** | | | Case number *(if known)* **25-03975-11** |
| --- | --- | --- | --- | --- |
| | Name | | | |

**47.**    **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

| | 47.1. | **2006 Ford Pick-up Truck** | $0.00 | $5,400.00 |
| --- | --- | --- | --- | --- |
| | 47.2. | **2023 Kia Sportage (leased)** | $0.00 | $0.00 |

**48.**    **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

| | 48.1. | **Forklift (Caterpillar)** | $0.00 | $10,000.00 |
| --- | --- | --- | --- | --- |

**49.**    **Aircraft and accessories**

**50.**    **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

**51.**    **Total of Part 8.**

| | $15,400.00 |
| --- | --- |

Add lines 47 through 50. Copy the total to line 87.

**52.**    **Is a depreciation schedule available for any of the property listed in Part 8?**
■ No
☐ Yes

**53.**    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 9:**    **Real property**

**54. Does the debtor own or lease any real property?**

■ No. Go to Part 10.
☐ Yes Fill in the information below.

**Part 10:**    **Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- |
| **60.**  **Patents, copyrights, trademarks, and trade secrets**<br>**Machine Patent** | $0.00 | | $0.00 |
| **61.**  **Internet domain names and websites**<br>**www.centurydesign.com** | $0.00 | | $0.00 |

**62.**    **Licenses, franchises, and royalties**

**63.**    **Customer lists, mailing lists, or other compilations**

**64.**    **Other intangibles, or intellectual property**

Debtor    **Century Design Inc.**                                          Case number *(if known)* **25-03975-11**
              Name

|                                          |          |          |
|------------------------------------------|----------|----------|
| **Machine designs**                      |          |          |
| **Schematics**                           |          |          |
| **Build Books**                          |          |          |
| **Procedures**                           | $0.00    | $0.00    |

---

65.   **Goodwill**

66.   **Total of Part 10.**                                                                          $0.00
      Add lines 60 through 65. Copy the total to line 89.

67.   Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C.§§ 101(41A) and 107?
      ☑ No
      ☐ Yes

68.   Is there an amortization or other similar schedule available for any of the property listed in Part 10?
      ☑ No
      ☐ Yes

69.   Has any of the property listed in Part 10 been appraised by a professional within the last year?
      ☑ No
      ☐ Yes

**Part 11:    All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

    ☑ No.   Go to Part 12
    ☐ Yes Fill in the information below.

---

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 5

Debtor **Century Design Inc.**
　　　　Name

Case number *(if known)* **25-03975-11**

| Part 12: | Summary |
| --- | --- |

In Part 12 copy all of the totals from the earlier parts of the form
**Type of property**

| | | Current value of<br>personal property | Current value of real<br>property |
| --- | --- | --- | --- |
| 80. | Cash, cash equivalents, and financial assets.<br>*Copy line 5, Part 1* | $10,049.46 | |
| 81. | Deposits and prepayments. *Copy line 9, Part 2.* | $8,879.50 | |
| 82. | Accounts receivable. *Copy line 12, Part 3.* | $24,462.88 | |
| 83. | Investments. *Copy line 17, Part 4.* | $0.00 | |
| 84. | Inventory. *Copy line 23, Part 5.* | $101,750.00 | |
| 85. | Farming and fishing-related assets. *Copy line 33, Part 6.* | $0.00 | |
| 86. | Office furniture, fixtures, and equipment; and collectibles.<br>*Copy line 43, Part 7.* | $13,800.00 | |
| 87. | Machinery, equipment, and vehicles. *Copy line 51, Part 8.* | $15,400.00 | |
| 88. | Real property. *Copy line 56, Part 9.* ............................................> | | $0.00 |
| 89. | Intangibles and intellectual property. *Copy line 66, Part 10.* | $0.00 | |
| 90. | All other assets. *Copy line 78, Part 11.* | + $0.00 | |
| 91. | **Total.** Add lines 80 through 90 for each column | $174,341.84 | + 91b. $0.00 |
| 92. | **Total of all property on Schedule A/B. Add lines 91a+91b=92** | | $174,341.84 |

# EXHIBIT 2

**Fill in this information to identify the case:**

Debtor name       **Century Design Inc.**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property                      12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>Amount of claim<br><br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1** **Bank of Southern California**<br>Creditor's Name<br><br>c/o DKM Law Group, LLP<br>50 California Street, Suite 15<br>San Francisco, CA 94111<br>Creditor's mailing address | Describe debtor's property that is subject to a lien<br>**Debtor's assets**<br><br><br>Describe the lien<br>**UCC Financing Statement from 2014/Superseded by Notice of Judgment Lien obtained in 2025** | $214,016.79 | Unknown |

Is the creditor an insider or related party?

☑ No
☐ Yes

Is anyone else liable on this claim?

Creditor's email address, if known

☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**9/12/2014, 7/15/25 and 7/16/25**

Last 4 digits of account number
**6421**

Do multiple creditors have an interest in the same property?

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| | | | |
|---|---|---|---|
| **2.2** **Exim Bank**<br>Creditor's Name<br><br>**811 Vermont Avenue**<br>**Washington, DC 20571**<br>Creditor's mailing address | Describe debtor's property that is subject to a lien<br><br><br>Describe the lien<br>**Security Interest in Assets of the Program** | $593,055.05 | Unknown |

Is the creditor an insider or related party?

☑ No
☐ Yes

Is anyone else liable on this claim?

Creditor's email address, if known

☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**11/8/2022**

Last 4 digits of account number
**5624**

Debtor    **Century Design Inc.**                                   Case number (if known) _____
_____
Name

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ☑ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

| 2.3 | **Kia Finance** | Describe debtor's property that is subject to a lien | $7,811.00 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **2023 Kia Sportage (leased)** | | |

**PO Box 20825**
**Fountain Valley, CA 92728**

Creditor's mailing address

Describe the lien
**Auto Lease**
Is the creditor an insider or related party?

Creditor's email address, if known

☑ No
☐ Yes
Is anyone else liable on this claim?

Date debt was incurred
**11/4/2023**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number
**5937**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: Check all that apply |
|---|---|
| ☑ No | ☐ Contingent |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Unliquidated |
| | ☐ Disputed |

3.  Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.    **$814,882.84**

**Part 2:  List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **Bank of Southern California**<br>**12265 El Camino Real, Ste 210**<br>**San Diego, CA 92130** | Line  **2.1** | |
| **GBC International Bank**<br>**333 South Grand Ave, Ste 3500**<br>**Los Angeles, CA 90071** | Line  **2.2** | |

# EXHIBIT 3

|  | Oct. 2025 | Nov. 2025 | Comments |
|---|---|---|---|
| **Cash At Beginning** | $10,049.46 | $11,556.40 |  |
| **Revenue** |  |  |  |
| Machine Sales | $260,000.00 | $260,000.00 | Based off of milestone payments |
| Material Sample Sales | $10,881.00 | $7,259.00 | Prepaid orders |
|  |  |  |  |
| **Gross Revenue** | $270,881.00 | $267,259.00 |  |
|  |  |  |  |
| **COGS** | $162,528.60 | $160,355.40 |  |
|  |  |  |  |
| **Gross Profit** | **$108,352.40** | **$106,903.60** |  |
|  |  |  |  |
| **Expenses** |  |  |  |
|  |  |  |  |
| **Payroll** |  |  |  |
| Insider wages (Keith, Samantha, Mackenzie) | $15,784.62 | $15,784.62 |  |
| Employee wages | $10,592.00 | $10,592.00 |  |
| Payroll taxes | $5,385.00 | $5,385.00 |  |
| Payroll company covered benefits | $1,992.00 | $1,992.00 | Medical benefits to non insider employees |
| Payroll company covered benefits -Insiders | $1,791.84 | $1,791.84 | Medical, vision, dental |
| Payroll processing fee - Trinet | $737.00 | $737.00 |  |
|  |  |  |  |
| **Professional & Outsourced Services** |  |  |  |
| Technical Consultant James Taylor | $10,000.00 | $10,000.00 | Contractor from the U.K. |
| Technical Consultant lodging expense | $2,400.00 | $2,400.00 | Agreement with Consultant provides for payment for lodging when in the U.S. |
| Adminstration support | $4,000.00 | $4,000.00 | Estimated payment for additional support staff Debtor intends to add in October. |
|  |  |  |  |
| **Sales & Marketing** |  |  |  |
| Advertising | $5,000.00 | $5,000.00 | Estimated marketing costs for new machine launch |
| Marketing Agency | $10,000.00 | $10,000.00 | Estimated marketing costs for new machine launch |
| Tradeshows/events |  |  |  |
| Web design/graphics | $2,500.00 | $2,500.00 | Estimated marketing costs for new machine launch |
|  |  |  |  |
| **Travel & Entertainment** | $2,500.00 | $2,500.00 |  |
|  |  |  |  |
| **Facility** |  |  |  |

| | | | |
|---|---|---|---|
| Rent - Miramar Investments | $8,962.00 | $8,962.00 | |
| Utilities | $3,500.00 | $3,500.00 | |
| | | | |
| **General & Administrative** | | | |
| Office supplies | $300.00 | $300.00 | |
| Software | | | |
| Insurance | $4,900.00 | $4,900.00 | GL, property, auto, worker's comp, life insurance) |
| Research and Development | $5,500.00 | $5,500.00 | In-house expenses for developing new products, processes, and machines. |
| Subscriptions | $1,500.00 | $1,500.00 | |
| Shop tools/maintance | $2,500.00 | $2,500.00 | |
| Travel | $1,500.00 | $1,500.00 | Includes travel for sales meetings and technical seminars. |
| Car lease | $651.00 | $651.00 | |
| Auto fuel/maintance | $350.00 | $350.00 | |
| | | | |
| **Adequate Protection Payments** | | | |
| Bank of Southern California | $2,000.00 | $2,000.00 | |
| Exim Bank | $2,500.00 | $2,500.00 | |
| | | | |
| **Total Expenses** | **$106,845.46** | **$106,845.46** | |
| | | | |
| **Net Operating Income** | $1,506.94 | $58.14 | |
| **Cash at End** | **$11,556.40** | **$11,614.54** | |

# EXHIBIT 4

**CSD 1001A** [07/01/18]
Name, Address, Telephone No. & I.D. No.

Michael Jay Berger (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212-2929
Telephone: (310) 271-6223
Facsimile: (310) 271-9805
E-Mail: Michael.Berger@BankruptcyPower.com

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re  CENTURY DESIGN, INC.

BANKRUPTCY NO. 25-03975-11

Date of Hearing:
Time of Hearing:
Name of Judge: Hon. Christopher B. Latham

Debtor.

## ORDER ON
### [PROPOSED] ORDER ON FIRST DAY MOTION AUTHORIZING INTERIM
### USE OF CASH COLLATERAL

The court orders as set forth on the continuation pages attached and numbered 2 through 2 with exhibits, if any, for

a total of 2 pages.  Motion/Application Docket Entry No. _____.

//

//

//

//

//

//

//


DATED: _____          _____

Judge, United States Bankruptcy Court

CSD 1001A [07/01/18]                                                                                                                    Page **2** of **2**

ORDER ON FIRST DAY MOTION AUTHORIZING INTERIM USE OF CASH COLLATERAL
DEBTOR: CENTURY DESIGN, INC.                                                                                    CASE NO: 25-03975-11

Debtor and Debtor-in-Possession Century Design, Inc., ("Debtor") filed a motion ("Motion") on October 3, 2025, seeking an interim order authorizing the use of cash collateral ("Cash Collateral") in which scheduled creditors Bank of Southern California and Exim Bank (the "Secured Creditors") claim a security interest.

The Court, having read and considered Debtor's Motion, and all papers in support, and good cause appearing, hereby orders as follows:

IT IS HEREBY ORDERED:

1. The Secured Creditors have a security interest in the Cash Collateral of the Debtor.

2. Debtor is authorized to use the Secured Creditors Cash Collateral commencing on October 3, 2025 on an interim basis through November 30, 2025, subject to the provisions set forth in this Order.

3. Debtor is authorized to use cash collateral to pay for its reasonable, ordinary, and necessary expenses in amounts as provided for in Exhibit 3 of the Motion and is incorporated into this Order by reference. Debtor is authorized to deviate from this Budget without further order of this Court up to 15% on any line item for each calendar month, otherwise, any expenditures in excess of the monthly amounts set forth in the Budget and the allowable variances will require the written approval of the Secured Creditors or further order of this Court.

4. If less than the entire amount of any expense category is expended in a particular period, the unused portion may be carried over to future periods.

5. To provide the Secured Creditors adequate protection, the Secured Creditors are granted a full replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted their pre-petition security interests.

6. The Secured Creditors shall not be required to file any financing statement, notice of lien or similar instruments in any jurisdiction or take any other action to perfect its post-petition security interests and liens created pursuant to this Order, because all such post-petition security interests and liens are automatically perfected upon entry of this Order.

7. Debtor shall pay monthly adequate protection payments to secured creditor Bank of Southern California in the amount of $2,000, and to secured creditor Exim Bank in the amount of $2,500, the first such payments to be paid within seven (7) days of the entry of this Order, and subsequent payments due on the first day of each month thereafter.

8. A hearing is set on _____ at _____.m. in Courtroom _____ of this Court for a further hearing on Debtor's Motion. At this hearing the Court will consider whether the interim relief provided in this Order shall be made final. Any opposition to Debtor's Motion shall be filed on or before _____ and any reply shall be filed no later than _____.

IT IS SO ORDERED.

CSD 1001A